IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MXR IMAGING, INC., d/b/a, UNIVERSAL MEDICAL SYSTEMS | ) CASE NO. 1:24 CV 1269 ) ) |
| Plaintiff, | ) JUDGE DONALD C. NUGENT ) ) |
| v. | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| DAVID ZAVAGNO, | ) ) |
| Defendant. | ) |

This matter is before the Court on the Motion of Defendant David Zavagno for Partial Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF #10). Plaintiff has filed a brief in opposition and Defendant has filed a reply brief in support. For the reasons that follow Defendant's Motion for partial judgment on the pleadings is granted in part and denied in part.

**Factual and Procedural Background**

Plaintiff MXR Imaging, Inc. d/b/a Universal Medical Systems ("MXR") brings this action against Defendant David Zavagno alleging claims of breach of employment contract (Count 1), breach of contract --the asset purchase agreement (Count 2), unjust enrichment (Count 3), violation of the Defend Trade Secrets Act of 2016 (Count 4), misappropriation of trade secrets under Ohio Uniform Trade Secrets Act (Count 5), unfair competition (Count 6), tortious interference with business relations (Count 7), breach of duty of loyalty (Count 8), and

defamation (Count 9). Defendant Zavagno now moves for judgment in his favor on the pleadings on the breach of contract claims (Counts 1 and 2), unjust enrichment (Count 3), unfair competition (Count 6), tortious interference with business relations (Count 7) and defamation (Count 9).

Plaintiff MXR is in the business of selling and delivering innovative medical imaging solutions, including MRI solutions, products, training services and supplies from a single source. Complaint (ECF #1) at ¶6. MXR also sells state of the art medical equipment, including Siemens MRI systems, which MXR sells in the secondary market. *Id.* at ¶7. Defendant has been engaged in the sale of MRI systems and related medical equipment for decades and was the owner of Universal Medical Systems, a provider of computed tomography ("CT") and MRI scanners. *Id.* at ¶8. On September 28, 2017, MXR purchased substantially all of the assets of Universal Medical Systems from Defendant for nearly $5 million. *Id.* at ¶9. At the time of the asset purchase, MXR hired Defendant as an MXR employee, giving him the title of President of MXR's Universal Medical Systems division subsidiary. *Id.* at ¶10. The parties executed an Asset Purchase Agreement and an Employment Agreement at the time of the asset purchase. (See ECF #1, Exhibits A and B.)

As the previous owner of Universal Medical Systems and President of MXR's Universal Medical Systems division/subsidiary, Defendant had extensive access to, and first hand knowledge of all aspects of MXR's valuable confidential information, including ideas, formulae, plates, compositions, know-how, research and development information, drawings, specifications, designs, plans, proposals, technical data, financial, business and marketing plans, customer and supplier lists. *Id.* at ¶11. When MXR purchased Universal Medical Systems in

2017, MXR took ownership of, and maintains the confidentiality of, the proprietary and confidential information of Universal Medical Systems. *Id.* at ¶13. As part of the Asset Purchase Agreement, Defendant agreed to "treat and hold as confidential any information concerning the Business that is not already generally available to the public [] and refrain from using any of the Confidential Information except in connection with this Agreement," *Id.* at ¶14, Ex. A §7.5©.

In connection with Defendant's employment, Plaintiff alleges that Defendant "agreed to and executed the Employment Agreement, effective September 28, 2017. In the Employment Agreement, Defendant agreed to multiple additional confidentiality, non-competition, non-solicitation, and non-disparagement covenants, all of which survive the termination of his employment with MXR." *Id.* at ¶18. See ECF #1 Ex. B §8(b); §8(c); §8(d). Defendant agreed to reimburse MXR for all costs and attorneys fees incurred in enforcing these covenants. *Id.* at §8(g).

On February 15, 2024, MXR and Defendant entered into a Transition and Separation Agreement & Release ("Separation Agreement"). See ECF #1 Ex. C. Pursuant to the Separation Agreement, Defendant would remain an MXR employee until his retirement on or around May 31, 2024. ECF #1 at ¶28. Plaintiff asserts that it recently learned that over the last two years Defendant has been selling Siemens products directly to MXR customers without involving or compensating MXR. *Id.* at ¶29. MXR states that it learned of these sales through communications from MXR customers advising MXR that Defendant sold at least 9 Siemens products over the last two years and that such sales were memorialized by documentation that did not mention MXR, and MXR received no profit or remuneration in connection with such sales. Id. at ¶ 30.

MXR also learned that in August 2021, while employed with MXR, Defendant created a separate entity unaffiliated with MXR, named Universal Systems Diagnostics, Inc., and cut a side deal directly with Siemens so he could personally profit from the sale of Siemens products without compensation to MXR. *Id.* ¶¶32-33. Plaintiff believes that Defendant has been working with a Siemens salesperson named Brian Beck and that Defendant directed all sales to MXR's customers without involving or compensating MXR. *Id.* at ¶31. Specifically, Plaintiff notes that Defendant facilitated the sale of a Siemens product to an MXR national customer (the "National Customer") on August 29, 2023 and MXR does not appear on the sale documentation and because MXR was not a party to the sale, MXR received no compensation. *Id.* at ¶¶34-35. Plaintiff asserts that Defendant continued to disclose confidential pricing information to Siemens related to MXR's sales of other OEM medical devices presumably to undercut MXR's sales of other OEM medical devices and divert all potential sales to Defendant's side-deal. Defendant's disclosure of confidential pricing information was so blatantly egregious that Siemens issued a cease and desist letter to Defendant to stop providing Siemens with confidential pricing information and/or payment terms. *Id.* at ¶¶40-42. Plaintiff contends that Defendant's actions in disclosing MXR's confidential information, particularly its pricing information and payment terms regarding other OEM medical devices sold by MXR, constitutes a breach of the Asset Purchase Agreement and the Employment Agreement. *Id.* at ¶¶39 and 43.

Further, Plaintiff alleges that Defendant attempted to conceal his side deals from MXR. Plaintiff asserts that it received an invoice for the sale of a Siemens MRI system to an MXR customer of which MXR had no record of having sold. MXR's CFO traveled to Cleveland to meet with Defendant to discuss his sale of Siemens products to MXR customers without

compensation to MXR. Defendant apparently claimed falsely that the sale was tied to equipment he had been permitted to retain and sell on his own. MXR emailed Defendant a number of times requesting information on sales and the status of Defendant getting MXR paid commissions on the previous sales made by Defendant. Defendant failed to provide any information on past sales or sales in progress or any information on commissions that should have been paid to MXR. *Id.* at ¶¶44-52. To date, Defendant has failed to provide MXR with any information concerning at least 9 Siemens products sales that Defendant procured directly. Id. at ¶55. "By secretly entering these side deals while employed at MXR, Mr. Zavagno has received compensation from Siemens either directly or through an entity wholly owned and controlled by Mr. Zavagno." Id. at ¶56.

On May 10, 2024, MXR sent Defendant a cease and desist letter demanding that Defendant cease all activities directly interfering with MXR's business and directly contacting MXR's customers. The letter also demanded information on all active deals currently being worked on by Defendant with MXR customers without MXR's involvement. Id. at ¶¶58-59, ECF#1, Ex. E. Defendant has refused to provide the requested information and is believed to still be directly contacting MXR customers, despite his employment terminating on May 31, 2024. Id. at ¶¶58-61.

Plaintiff alleges that some of MXR's customers have reported to MXR that Defendant told them to speak with him directly, not to MXR, after his separation of employment from MXR and that in his communications with MXR customers, Defendant disparaged MXR's brand and reputation. Id. at ¶53.

Defendant now moves for partial judgment on the pleadings at to Count 1-Breach of Employment Agreement; Count 2- Breach of the Asset Purchase Agreement; Count 3-Unjust Enrichment; Count 6- Unfair Competition; Count 7-Tortious Interference with Business Relations; and Count 9-Defamation. The motion is now fully briefed and ready for decision.

## Standard of Review

The standard of review used by a district court to rule on a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as the standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. Tenn. 1998). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000). In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir.

Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

### Discussion

**1. Breach of Contract Claims** (Counts 1 and 2)

Defendant argues that he is entitled to judgment on the pleadings as to Plaintiffs breach of contract claims for breach of the Asset Purchase Agreement (Count 1) and the Employment Agreement (Count 2) because the Separation Agreement supersedes the Employment Agreement and the applicable sections of the Asset Purchase Agreement. Specifically, Defendant argues that Section 7 of the Separation Agreement nullifies the Employment Agreement and the employment related sections of the Asset Purchase Agreement. Section 7 provides:

> 7. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations, representations and discussions of the parties, whether oral or written, express or implied, including without limitation the Existing Agreements, it being agreed that as of the Termination Date the Existing Agreements shall be of no further force or effect.

(ECF #1,Ex. 3)

Plaintiff argues that the Separation Agreement does not supersede the Asset Purchase Agreement or the Employment Agreement and that Plaintiff preserved its claims against Defendant pursuant to the Separation Agreement. First, Plaintiff notes that the Complaint describes Defendant's conduct that predates the execution of the Separation Agreement and argues that Defendant's pre-February 2024 breach of those contracts cannot be superseded by a separate agreement that did not exist at the time of the breach.

Second, Plaintiff notes that the Separation Agreement does not supersede the agreements that relate to Defendant's employment with MXR or MXR's purchase of assets of Universal Medical Systems– the Employment Agreement and the Asset Purchase Agreement. Rather, the Separation Agreement only supersedes prior agreements "pertaining to the subject matter" of the Separation Agreement. ECF#1, Ex. 3 at §7.

Plaintiff argues that the scope of the Employment Agreement and Asset Purchase Agreement are so much broader and more detailed than the Separation Agreement that they are not the same subject matter as the Separation Agreement. The Employment Agreement and the Asset Purchase Agreement cover wide areas not covered by the Separation Agreement and most importantly, both the Employment Agreement and Asset Purchase Agreement contain robust restrictive covenants prohibiting Defendant from competing with MXR, using and disclosing Confidential Information, soliciting MXR customers, and disparaging MXR. Both Agreements contain tolling provisions extending the terms of the restrictive covenants should Defendant breach the terms of the Agreements. See ECF #1, Ex. A §7; Ex. B § 8(b)-(d). The Separation Agreement according the Plaintiff is a narrow agreement in which Plaintiff agreed to pay

commissions to Defendant (without knowledge of his conduct) as his employment ended, while Defendant released any prior claims.

Defendant maintains that the language of the Separation Agreement is clear and that it supersedes the Employment Agreement and portions of the Asset Purchase Agreement. As the parties maintain that the allegedly unambiguous language of the Separation Agreement should be interpreted in opposing ways, the court "cannot resolve the parties' dispute on a motion to dismiss or a motion for judgment on the pleadings." *U.S. Bank N.A. v. Triaxx Asset Mgmt, LLC*, No. 16 cv 08507, 2017 WL 3610584, at *7 (S.D.N.Y. July 16, 2017); *Ohio Nat'l Life Ins. Co. V. Cetera Advisor Networks, LLC*, No. 1:19 cv 47, 2021 WL 2819838 (S.D. Ohio July 7, 2021)(cross motions for judgment on the pleadings denied where each party to a contract argued that the contract unambiguously means what each party asserted). Accordingly, Defendant's motion for judgment on the pleadings as to Counts 1 and 2 is denied.

### 2. Unjust Enrichment (Count 3)

Defendant moves for judgment on the pleadings as to Plaintiff's unjust enrichment claim asserted in Count 3 of the Complaint. While acknowledging that Plaintiff has plead the elements of an unjust enrichment claim–(1) a benefit conferred upon the Defendant, (2) that Defendant knew of the benefit, and (3) that it would be unjust to allow Defendant to retain the benefit without payment–Defendant asserts that an equitable claim of unjust enrichment can only survive in the absence of an enforceable contract. *See Kent State Univ. v. Manley*, 2023-Ohio-4650 (8th Dist.); *Bunta v. Superior VacuPress, LLC*, 171 Ohio St.3d 464 (2022).

Plaintiff counters that it has pled its claim of unjust enrichment in the alternative to its breach of contract claims which is permitted under Fed. R. Civ. P. 8(d)(2) which provides that

"[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." As such courts generally deny motions to dismiss unjust enrichment claim pled in the alternative to breach of contract claims. In order to dismiss Plaintiff's unjust enrichment claim here, the Court must find that one of the contracts at issue here is valid, enforceable, and governs this dispute. While that may be the case in the end, that finding cannot be made at this time. As such, Defendant's motion for judgment on the pleadings as to Count 3 is denied.

### 3. Unfair Competition (Count 6)

Defendant asserts that Plaintiff has failed to adequately plead unfair competition. Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are those of another. It may also extend to "unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Landskroner v. Landskroner*, 2003-Ohio-4945, ¶ 52, 154 Ohio App. 3d 471, 490–91, 797 N.E.2d 1002, 1017 (citations omitted). Specifically, Defendant argues that Plaintiff's claim is amorphous and elusive because the Complaint merely states that "the aforementioned conduct of Mr. Zavagno constitutes an unfair method of competition." See ECF #1, ¶ 98. Defendant counters that it has pled, throughout the Complaint, that Defendant's conduct was designed to harm Plaintiff's business. Plaintiff points to the following allegations that support its unfair competition claim:

* Zavagno created and is operating Universal Systems Diagnostics in direct competition with MXR, despite MXR purchasing Zavagno's prior business,

Universal Medical Systems, for significant compensation (Compl., ECF No. 1 ¶ 32);

* Zavagno is actively selling products sold by MXR directly to MXR customers, and in doing so using MXR's Confidential Information that Zavagno obtained because of his employment with MXR (id. ¶¶ 33-43);

* Zavagno is actively disclosing MXR's Confidential Information to MXR's competitors and suppliers of CT and MRI products, looking to undercut MXR and harm its business dealings with both its suppliers and customers (id. ¶¶ 40-43, 72);

* Zavagno is actively communicating directly with MXR customers, asking MXR's customers to speak with Zavagno directly so that Zavagno can divert more business from MXR (id. ¶¶ 53, 62, 65);

* "MXR's customers [are] not aware that they [are] not dealing with Zavagno" (Compl. Introduction, ECF No. 1, PageID #: 2); and

* Zavagno is actively disparaging MXR to MXR's customers (id. ¶¶ 53, 111-113.)

These allegations are sufficient to support an unfair competition claim.

### 4. Tortious Interference with Business Relations (Count 7)

Defendant argues that Plaintiff has failed to state a claim of tortious interference with business relations because it failed to allege that Defendant's conduct actually caused a customer to cease or refrain from doing business with Plaintiff. Under Ohio law, to state a claim for tortious interference with business relationships, a plaintiff must allege (1) the

existence of a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 756 (S.D. Ohio 2013) *citing Wagner v. Circle W. Mastiffs*, 732 F.Supp.2d 792, 807 (S.D.Ohio 2010).

Plaintiff notes that the following allegations sufficiently support all the elements of a tortious interference with business relations:

\* It has a contractual relationship with both its customers and its CT and MRI equipment manufacturers, like Siemens (Compl., ECF No. 1 ¶¶ 57, 62);

\* Zavagno, because of his employment with MXR, was at all times aware of MXR's business contracts and relations with its customers and equipment manufacturers, and Zavagno was at all times aware that those customers were customers of MXR's, not Zavagno's or his side business Universal Systems Diagnostics (id. ¶ 102);

\* Zavagno intentionally procured the breach of said contracts and relations by both customers and equipment manufacturers, like Siemens and other OEMs, by making side deals to sell MXR products—manufactured by Siemens or other OEMs—to MXR customers, cutting MXR out of the equation (id. ¶¶ 29, 57, 103);

\* Zavagno, as an employee of MXR, owed a duty to MXR to act on behalf of MXR and not on behalf of himself, and that Zavagno had no privilege to enter into these side deals (id. ¶ 104); and

\* MXR pled that it has been damaged by Zavagno's tortious interference, as it has

received no consideration from Zavagno's side deals entered into (id. ¶¶ 35, 105).

These factual assertions are sufficient to state a claim for tortious interference, including describing damage it suffered and will continue to suffer as a result of Defendant's actions.

**5. Defamation** (Count 9)

Defendant asserts that Plaintiff has failed to plead the necessary elements of a defamation claim. Specifically, Defendant states that Plaintiff did not identify a single statement made by Defendant; that he made the unidentified statements without privilege to do so; that the alleged statements were made with actual malice, negligence, or any degree of fault; or to identify any damage it has suffered from the alleged defamatory statements.

Defamation is a false publication that injures a person's reputation. *Fisher v. Ahmed*, 153 N.E.3d 612, 624 (Ohio Ct. App. 2020). There are two types of defamation, slander and libel: the former is spoken, the latter is written. id. The prima facie requirements for both are: (1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement. See id. (citing *Am. Chem. Soc'y v. Leadscope, Inc.*, 133 Ohio St.3d 366, 978 N.E.2d 832, 852 (2012)).

Here, the Complaint alleges that "some of MXR's customers have reported to MXR ... that Mr. Zavagno, in his communications with MXR customers, has disparaged MXR's brand and reputation." (ECF #1 ¶ 53) "Mr. Zavagno's statements are defamatory, disparaging, and injurious to the reputation of MXR, and the reputations of its principals and employees. Mr. Zavagno's false statements are presumed harmful and indeed have harmed MXR in its trade and business." Id. ¶¶ 112-113. The Complaint fails to provide the exact statements allegedly

made by Defendant–merely alleging that the statements disparaged MXR's brand and reputation. In terms of specificity, "[a] defamation complaint must allege the substance of the allegedly defamatory statements," but "need not ... set [them] out verbatim." *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093 (S.D. Ohio 2021) *citing Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018). Other than the allegation that the statements disparaged Plaintiff's business, there is no allegation describing the substance of the alleged defamatory statements. "Disparaging" is too broad of a descriptor to be particularly useful in identifying an alleged defamatory statement. The lack of any description of the substance of the alleged defamatory statements requires dismissal of Plaintiff's defamation claim in this instance.[1]

### Conclusion

For the reasons stated above, the Motion of Defendant David Zavagno for Partial Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (ECF #10) is denied as to Counts 1 and 2 (breach of contract), count 3 (unjust enrichment), count 6 (unfair competition), and count 7 (tortious interference with business relations). The Motion is granted as to Plaintiff's defamation claim (Count 9). IT IS SO ORDERED.

_/s/ Donald C. Nugent_
DONALD C. NUGENT
United States District Judge

DATED: March 6, 2025

---

[1] Plaintiff is given leave to amend its complaint should it wish to re-state its defamation claim with the required specificity. Any amended complaint must be filed by March 24, 2025.