**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MXR IMAGING, INC.,** | ) | **Case No. 1:24–CV–01269** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **v.** | ) | |
| | ) | |
| **DAVID ZAVAGNO,** | ) | <u>**Memorandum Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on *Plaintiff-Counterclaim Defendant MXR Imaging, Inc.'s*

[("MXR")] *Motion for Partial Judgment on the Pleadings* under FED. R. CIV. P. 12(c) filed on

August 21, 2025. (ECF #41). MXR seeks to dismiss Defendant-Counterclaim Plaintiff David

Zavagno's ("Zavagno") amended counterclaim of tortious interference with business relations

(Count Two) for failure to state a claim. (*Id.*). Mr. Zavagno opposed the Motion on September

22, 2025, (ECF #42), and MXR replied on October 6, 2025, (ECF #43). Mr. Zavagno then filed

for leave to file a sur-reply on October 20, 2025 (ECF #44), which this Court granted a day later.

(ECF #45). For the reasons that follow, MXR's Motion for Partial Judgment on the Pleadings

(ECF #41) is GRANTED.

### Factual and Procedural History

Mr. Zavagno formed Universal Medical Systems ("UMS")[1] in 1986 to sell medical imaging equipment. (ECF #34, *Amended Counterclaim*, p.1–2 ¶4). He then sold substantially all the assets of that company to MXR in 2017 for around $5 million. (ECF #1, *Complaint*, p.4 [PageID #4]). As part of the sale, Mr. Zavagno received a position as an account executive with MXR and retained certain equipment that he was permitted to sell on his own. (ECF #34, p.2–3 ¶¶9–11). MXR alleges that Mr. Zavagno continued to sell medical devices to its customers in violation of his employment agreement and duty of loyalty to MXR. (ECF #41, *Plaintiff-Counterclaim Defendant's Memorandum in Support of its Motion for Partial Judgment on the Pleadings*, p.2). Mr. Zavagno defends by alleging that the employment agreement did not preclude him from operating an independent business while employed by MXR. (ECF #34, *Amended Counterclaim*, p.2).

MXR filed the instant lawsuit in the Northern District of Ohio Eastern Division on July 25, 2024. Mr. Zavagno answered the Complaint on September 30, 2024, and simultaneously filed counterclaims for breach of contract (Count 1), accounting (Count 2), and tortious interference with business relations (Count 3). (ECF#7, *Answer and Counterclaim*, p.17–19). MXR filed a Motion for Partial Judgment on the Pleadings on July 8, 2025, which the Court granted, dismissing Mr. Zavagno's counterclaim of tortious interference (Count 3). (ECF #31). He was given leave to amend his counterclaim, which he did on July 22, 2025. (ECF #34, *Amended Counterclaim*). He reinstated his claim of tortious interference and attempted to cure the deficiency previously identified by the Court. (*Id.*). MXR now moves to dismiss Mr. Zavagno's amended counterclaim of tortious interference for failure to state a claim. (ECF #41).

---

[1] Mr. Zavagno's company, Universal Medical Systems, Inc. ("UMS"), later became known as Universal Systems Diagnostics, Inc. ("USD"). (ECF #7, *Answer and Counterclaim*, p.4 ¶32).

**Standard of Review**

The standard of review used by a district court to rule on a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is the same standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. Tenn. 1998). A motion to dismiss under FED. R. CIV. P. 12(b)(6) lets a defendant test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Ass'n Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sep. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the

– 3 –

case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).[2]

### Tortious Interference with Business Relations

In order to establish a claim of tortious interference with a business relationship, a plaintiff must show:

> "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship, and[,] (4) damages resulting therefrom. The basic principle of a 'tortious interference' action is that one, who without a privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby. However . . . acts performed within a business relationship are considered subject to a qualified privilege. In order to overcome a defense of qualified privilege, a party must show that the wrongdoer acted with actual malice [which] denotes an unjustified or improper interference with the business relationship."

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed.Appx. 181, 193 (6th Cir. 2001) (quoting *Chandler & Assocs., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App.3d 572, 583 (1997) (internal quotations and citations omitted)).

"[T]he doctrine of qualified privilege is applicable to tortious interference cases, and acts performed within a business relationship are considered subject to a qualified privilege." *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio.App.3d 572, 583 (1997). A qualified privilege exists in circumstances where parties have a "business relationship," which can be created when parties enter into a contract. *Id.* at 584.

---

[2] For the purposes of this Motion, the Court will consider the schedules of the Asset Purchase Agreement ("APA") attached by Plaintiff Counterclaim-Defendant MXR to its *Reply in Support of its Motion for Partial Judgment on the Pleadings.* (ECF #43, *Exhibit A*, p.2–223 [PageID #504–725]). A court "may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Devlin v. Kalm*, 531 Fed. Appx. 697, 703 (6th Cir. 2013). There is no doubt that the schedules to the APA are central to the claims in this case. The schedules help identify which customers had a business relationship with MXR and, therefore, the customers with whom it had a qualified privilege.

"[O]nce a qualified privilege has been asserted, 'actual malice[]' must be demonstrated in order to defeat the qualified privilege defense." *Smith v. Ameriflora 1992, Inc.*, 96 Ohio App.3d 179, 188 (1994) (emphasis retained). "Actual malice in a tortious interference claim is not ill-will, spite or hatred; rather, it denotes an unjustified or improper interference with the business relationship." *Chandler*, 125 Ohio App.3d at 583 (citing *Smith v. Ameriflora1992, Inc.*, 96 Ohio App.3d 179, 644 N.E.2d 1038 (1994); *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 662 N.E.2d 1088 (1995)).

Mr. Zavagno alleges that "MXR has improperly contacted MXR's customers and business partners and falsely and in bad faith told them they could not do business with Mr. Zavagno, causing Mars and Canon (and potentially others) to cease their business relationships with Mr. Zavagno." (ECF #42, p.5). Mr. Zavagno incorrectly asserts that "[he] only needs to show actual malice if and when MXR establishes its conduct was privileged *and* that it acted in good faith." (ECF #42, p.7) (emphasis added). However, MXR needs only to establish the existence of a privilege, which Mr. Zavagno must then overcome by a showing of actual malice.

MXR has established the existence of a privilege. The record reflects that MXR purchased distributor relationships from Mr. Zavagno including, Philips, Canon/Toshiba, Esaote, Siemens, Mars, and others. (ECF #43, p.3 [PageID #494]). Accordingly, MXR has established that it shared a contractual relationship, and thus a business relationship, with all the customers with whom Mr. Zavagno alleges it interfered. (ECF #43, p.6 [PageID #497]). Therefore, the acts between MXR and the customers in question are subject to a qualified privilege.[3]

---

[3] "The question of whether a privilege exists is a question of law for the court," and "[a] privilege's existence and whether it has been abused can be properly decided on a motion to dismiss." *Bowles v. Macomb Community College*, 558 F.Supp.3d 539, 553 (E.D. Mich. 2021) (citing *Elias v. Federal Home Loan Mortg. Corp.*, 581 F.App'x 461, 467–68 (6th Cir. 2014)).

Mr. Zavagno must overcome this privilege by proving that MXR acted with actual malice. He has refused to do so, and he cannot; "[i]nherent in the concept of actual malice is the notion that a wrongful act has been done without any plausible legal justification." *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 457 (2009). There is no evidence in the record to support the claim that MXR acted with the intent to maliciously interfere with Mr. Zavagno's business relationships. Rather, the record demonstrates that MXR was acting to protect its relationships with the customers it purchased from Mr. Zavagno.

In this case, the absence of actual malice exhibited by MXR also cuts against a finding of "improper interference," an element required to bring a claim of tortious interference. In determining whether a defendants actions were improper, the court considers the nature of the actor's conduct; the actor's motive; the interests of the other with which the actor's conduct interferes; the interest sought to be advanced by the actor; the social interests in protecting the freedom of action of the actor and the contractual interests of the other; the proximity or remoteness of the actor's conduct to the interference; and, the relations between the parties. RESTATEMENT (SECOND) OF TORTS § 767 (1979); *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999). "Although all these factors must be weighed against each other and balanced in arriving at a judgment, [t]he nature of the actor's conduct is a chief factor in determining whether the conduct is improper or not." *Id.* at Comment c. As discussed above, MXR sought to protect the relationships with the customers it purchased from Mr. Zavagno, rather than improperly interfere with his business relationships.

Given that MXR acted to protect the relations with its customers and because Mr. Zavagno cannot show actual malice, his amended counterclaim for tortious interference with business relations fails. Accordingly, MXR's *Motion for Partial Judgment on the Pleadings* (ECF #41) is GRANTED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: November 19, 2025