**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| MXR IMAGING, INC., | ) |
|  | ) |
|     Plaintiff/Counterclaim | ) |
|     Defendant, | ) |
|  | )   Case No. 1:24-CV-01269 |
|     v. | ) |
|  | )   JUDGE DONALD C. NUGENT |
| DAVID ZAVAGNO, *et ano.* | ) |
|  | ) |
|     Defendants/Counterclaim | ) |
|     Plaintiff. | ) |
|  | ) |

---

**DEFENDANT/COUNTERCLAIM PLAINTIFF DAVID ZAVAGNO AND**
**DEFENDANT UNIVERSAL SYSTEMS DIAGNOSTICS, INC.'S TRIAL BRIEF**

Pursuant to this Court's Civil Jury Trial Order (ECF 48), Defendant/Counterclaim Plaintiff

David Zavagno and Defendant Universal Systems Diagnostics, Inc. ("USDI") hereby submit their

trial brief.

## I.    STATEMENT OF FACTS

### A.    MXR purchases certain assets of Universal Medical Systems.

On September 28, 2017, David Zavagno, Universal Medical Systems, Inc. ("UMS"), and

MXR Imaging, Inc. ("MXR") (which was at that time known as "Merry X-Ray Chemical Corp.")

entered into an Asset Purchase Agreement ("APA"). UMS was an industry leader in selling

medical equipment, specifically CT and MRI equipment, primarily to medical, industrial, and

veterinary customers. The company was founded and built by Mr. Zavagno.  Under the APA,

MXR purchased most of the assets of UMS along with the trade name "Universal Medical

Systems," but not the UMS corporate entity itself.  MXR was also assigned certain dealership and

1

distributorship agreements between UMS and original equipment manufacturers such as a Dealership Agreement between Siemens Medical Solutions USA, Inc. ("Siemens") and UMS, which provided UMS (and subsequently MXR) the right to sell *new* CT and MRI products. Since the UMS entity was not purchased, UMS remained under the ownership of Mr. Zavagno and changed its name to Universal Systems Diagnostics, Inc. ("USDI") in accordance with the express terms of the APA.

### B.    Mr. Zavagno becomes an employee of MXR.

Also on September 28, 2017, Mr. Zavagno entered into an Employment Agreement with MXR. The Employment Agreement had an effective term of three years, provided that Mr. Zavagno would serve as President of MXR's Universal Medical Systems division/subsidiary and that Mr. Zavagno would report directly to Ted Sloan, MXR's then-President. The Employment Agreement provided for a base salary of $150,000 and the possibility for a "Performance Bonus."

The Employment Agreement contained restrictive covenants related to confidentiality, noncompetition, non-solicitation, and non-disparagement. As to noncompetition, the restrictive covenant was effective during the duration of the Employment Agreement as well as the 24-month period thereafter, so by its terms it would expire on September 28, 2022. This made the Employment Agreement's noncompetition provision coterminous with the noncompetition provision in the APA, which provided that the noncompetition provision was effective for five years after the closing date (September 28, 2017). Ultimately, the Employment Agreement terminated after three years, and the restrictive covenants contained in both the APA and Employment Agreement expired on September 28, 2022. The evidence will show that MXR understood that the non-competition provisions would terminate in September 2022.

**C.      The APA allowed Mr. Zavagno to independently sell "Excluded Assets."**

The APA provided that certain assets, such as open orders, inventory, contracts, and accounts receivable, were retained by Mr. Zavagno. Mr. Zavagno's efforts to sell or otherwise dispose of these "excluded assets" were expressly permitted by Section 7.10(d) of the APA, and could not constitute a breach of any restrictive covenants contained in the APA. MXR and Mr. Zavagno subsequently updated the list of excluded assets on or around October 30, 2017 to include WIP Inventory, open orders, and other items that would be retained exclusively by Mr. Zavagno. Mr. Zavagno also came into possession, with MXR's knowledge, of certain equipment abandoned by MXR that had been stored in a warehouse located in Chardon, Ohio, which Mr. Zavagno would sell alongside the excluded assets.  As will be demonstrated at trial, the value of these assets was substantial and required significant work by Mr. Zavagno, through USDI as a separate, independent business, and MXR was aware that Mr. Zavagno would have to operate a separate entity in order to effectuate the sales of these assets.

Notwithstanding Mr. Zavagno's dual responsibilities to effectuate sales as an MXR employee and to sell excluded assets through USDI, Mr. Zavagno was a highly successful salesperson at MXR, generating approximately $50 million in CT and MRI equipment sales and service contracts for MXR during his tenure. Robert Manetta, the President of MXR's Nationwide Imaging Division, has acknowledged that Mr. Zavagno was a good salesman, which is undeniable in light of the revenues that Mr. Zavagno produced for MXR.

**D.      Mr. Sloan agrees that MXR would pay Mr. Zavagno commissions on sales and service contracts to "national accounts."**

At the outset of his employment at MXR, Mr. Zavagno and Mr. Sloan reached an understanding over commissions to be paid to Mr. Zavagno for sales of CT and MRI equipment and service contracts generated from "national accounts" that were assigned exclusively to Mr.

3

Zavagno. The MXR "national accounts" were primarily originated from business relationships fostered and maintained by Mr. Zavagno and represented some of MXR's largest customers. Mr. Sloan and Mr. Zavagno's agreement to pay Mr. Zavagno commissions was never memorialized in a single writing, but the evidence will demonstrate that Mr. Zavagno was entitled to receive commissions on sales and service contracts entered into by MXR with national accounts. MXR representatives and employees repeatedly acknowledged this arrangement, and Mr. Zavagno was paid commissions on this basis, despite there being no provision for such compensation in his Employment Agreement and no other written commission plan. This arrangement was unique to Mr. Zavagno, as other MXR salespeople were assigned to regions, not specific customer accounts, and MXR acknowledged that no other MXR salesperson has been paid commissions on this basis. However, as the evidence will demonstrate, Mr. Zavagno did not receive all of the commissions to which he was entitled, because others at MXR unilaterally decided not to pay commissions on certain sales. Nor did he ever receive a full accounting of all sales and service contracts that MXR entered into with his accounts, despite his making many requests for such information over the years.

### E. Mr. Zavagno begins reporting to Bernard Amato.

Mr. Sloan departed from MXR in late 2018 or early 2019. Subsequently, Mr. Zavagno began reporting directly to Bernard Amato, MXR's CFO and would continue to do so for the remainder of his employment at MXR. This arrangement was unique in that Mr. Zavagno was the only salesperson employed at MXR to report directly to Mr. Amato despite MXR having a separate division (known as "Nationwide") that sold MRI/CT systems. Mr. Zavagno and Mr. Amato also discussed Mr. Zavagno's commissions, and those discussions continued throughout the remainder of Mr. Zavagno's employment at MXR. Mr. Amato acknowledged that Mr. Zavagno was entitled to commissions, that certain national accounts belonged to Mr. Zavagno, and that Mr. Zavagno

4

could separately sell assets through USDI, but in the absence of a signed agreement, the two struggled to define the exact parameters of the arrangement.

### F.      MXR and Mr. Zavagno enter into the first "offset" agreement.

Throughout the first year and a half of Mr. Zavagno's employment, the parties had frequent disputes about amounts owed to one another. The disagreements primarily arose from Mr. Zavagno's operation of USDI's separate business, which sometimes necessitated the use of MXR resources, and MXR's failure to pay Mr. Zavagno the commissions he was owed. There also remained a general confusion about Mr. Zavagno's role with MXR.  To reconcile the disputed amounts owed to one another, Mr. Zavagno and MXR entered into an "offset" agreement on or around July 11, 2019. Once the disputed amounts were reconciled, Mr. Zavagno owed MXR a "net payable" of $63,082.79. Mr. Zavagno's accountant, John Zalick, assisted with the reconciliation process. However, as will be demonstrated at trial, Mr. Zavagno and Mr. Zalick operated under the assumption that they were provided a complete accounting of the commissions owed to Mr. Zavagno, which turned out not to be true.

### G.      MXR loses its ability to sell new Siemens CT / MRI products.

In or around August 2019, MXR and Siemens had a dispute regarding two failed installations of veterinary imaging equipment at a customer's facility. Siemens was unhappy with the actions taken by MXR (primarily directed by its vice president of operations, Shelby Lemler), and as a result, on September 6, 2019, Siemens terminated the Dealership Agreement between UMS and MXR, which was one of the agreements that had been assigned to MXR pursuant to the APA. After the termination of the Siemens Dealership Agreement, MXR lost its ability to sell new Siemens CT and MRI equipment to veterinary customers. MXR has admitted that after September 2019, it did not have the right or ability to sell new Siemens MRI or CT products. Consequently,

5

the only Siemens products that MXR could sell after September 2019 were used or refurbished products which it independently sourced in the secondary market.

**H.      Mr. Zavagno, through USDI, enters into a Distributorship Agreement with Siemens to complete existing open orders.**

The termination of the Dealership Agreement left Mr. Zavagno in a bind, as he was responsible for completing open orders that involved Siemens equipment previously sold to customers. In order to fulfill those commitments and avoid failing customers, Mr. Zavagno approached Murat Gungor, an employee of Siemens, and requested assistance, since the open orders could not be completed without an agreement in place with Siemens. Siemens agreed to support completion of these projects, so Mr. Zavagno, through USDI, entered into a Distributorship Agreement with Siemens in May 2020 to facilitate project completion and resolve Mr. Zavagno's existing obligations. Importantly, Mr. Zavagno's sales of Siemens equipment for USDI occurred only after Siemens terminated the Dealership Agreement with MXR.  As will be demonstrated at trial, the two open orders were completed pursuant to the original Distributorship Agreement between Siemens and USDI.

**I.      Mr. Zavagno becomes an at-will employee at MXR.**

The Employment Agreement expired by its own terms on September 28, 2020. Mr. Zavagno subsequently continued his employment with MXR as an at-will employee. Mr. Zavagno's compensation remained at a base annual wage of $150,000, he remained the President of MXR's UMS division/subsidiary, and he continued reporting directly to Mr. Amato. Mr. Zavagno's at-will employment arrangement also included MXR's 2020 Commission Plan for the remainder of 2020.

6

**J.      Mr. Zavagno and MXR enter into the second "offset" agreement.**

Mr. Zavagno and MXR continued their disputes regarding commissions owed to Mr. Zavagno and amounts owed to MXR for utilization of MXR resources by USDI. These circumstances led Mr. Zavagno and MXR to enter into a second offset agreement on or around February 18, 2021, which again was intended to reconcile the amounts owed due to the unique nature of Mr. Zavagno's employment at MXR and separate business operation.

**K.      Mr. Zavagno enters into an Agency Agreement with Siemens at the request of one of the largest customers in the industry.**

As Mr. Zavagno continued his work at MXR, a major customer in the veterinary imaging industry reached out to Mr. Zavagno. Dr. Steve Fisher, the Global Commercial Vice President at Mars Veterinary Health, sought to purchase new Siemens MRI systems to help attract top physician candidates for employment at Mars. The Mars organization expanded to include other veterinary hospital systems including BluePearl and VCA.  MXR had no authorization or ability to sell the Siemens MRI systems desired by Mars, as it had lost the Siemens contract.

Because of Mr. Zavagno's and Dr. Fisher's longstanding relationship and involvement in prior installations that preceded Mr. Zavagno's employment at MXR, Mr. Zavagno was brought in at the request of Dr. Fisher. This led Mr. Zavagno, through USDI, to enter into an Agency Agreement with Siemens on or around August 19, 2021.

**L.      MXR is aware of Mr. Zavagno's Siemens sales but does nothing.**

As the evidence will demonstrate, MXR was long aware of the existence of USDI and its sales activities. Invoices between USDI and third parties, including Siemens, were received by MXR throughout Mr. Zavagno's employment at MXR, and MXR employees repeatedly expressed confusion about what bills or invoices belonged to which entity. And Mr. Amato conceded that he

was aware of USDI's existence as an entity. However, MXR was tired of the wrangling with Mr. Zavagno and wanted him out of the company.

MXR saw its chance when another misdirected Siemens invoice was received by MXR. On November 23, 2022, Mr. Amato, Seth Kardonsky (MXR's Manager of Sales Operations), and Shelby Lemler discussed via email a Siemens quote that had been sent to MXR, apparently by mistake. MXR now saw an opportunity to rid itself of Mr. Zavagno. Mr. Kardonsky wrote that "Dave's signature is on the [S]iemens quote" and further stated that:

> I was thinking maybe we can use this to our advantage with Dave, saying we won't go after him for moonlighting, but he's got to depart without a peep, can in no way disparage mxr and its employees, and that he agrees he'll stay out of Mars, ethos and any other vet customers we're already working with for a period of x years. Obviously still wait till we're done with the mars MSA.

As suggested by Mr. Kardonsky, MXR did nothing at first, since there were customer opportunities that it still wanted to exploit using Mr. Zavagno's knowledge and contacts. Mr. Amato and Mr. Lemler did not respond to the email. The matter was never brought to Mr. Zavagno's attention, and MXR's employees testified that nothing was done to follow up on this email. Instead, MXR continued to employ Mr. Zavagno and benefit from his management of national accounts to pursue new sales opportunities, including with BluePearl and Mars Veterinary Health.

**M.     Mr. Zavagno attempts to get a new Siemens Agreement for MXR.**

Throughout 2023, Mr. Zavagno and Mr. Amato extensively discussed seeking a new Siemens Agreement for MXR that would allow MXR to sell new Siemens equipment. Mr. Zavagno informed Mr. Amato that Siemens did not have any interest in entering into an agreement with MXR at that time. Siemens' actions reflect this, as Mr. Amato's outreach attempts to Siemens were unsuccessful. Mr. Amato repeatedly emailed Murat Gungor to no avail, and Mr. Amato's

interactions with Mr. Gungor culminated in a brief ten-minute phone call. Mr. Zavagno also sought to secure a new Siemens deal for MXR, but he was unable to do so before his retirement from MXR.

### N.      MXR discovers additional amounts owed to Mr. Zavagno, and Mr. Zavagno signs a commission plan.

In early 2023, Effie Fryer, MXR's Vice President of Financing, worked to reconcile additional commissions owed to Mr. Zavagno. This process uncovered at least $73,029.90 in previously unpaid commissions which were owed to Mr. Zavagno, further demonstrating the parties' unique relationship and MXR's failure to consistently pay Mr. Zavagno the commissions he was owed when they were due.

On or around July 18, 2023, Mr. Zavagno signed MXR's 2023 Commission Plan. The 2023 Plan listed Mr. Zavagno as MXR's "National Sales Mgr." and "Account Executive CT/MR." The Plan entitled Mr. Zavagno to an 18% commission on gross margin for CT equipment sales, and a 14.5% commission on gross margin for MR equipment sales. This was the first commission plan that Mr. Zavagno signed while at MXR. But despite the express commission arrangement, MXR's failure to pay Mr. Zavagno commissions he was owed persisted. Among other things, in December 2023, when discussing a list of sales made by Mr. Zavagno with other MXR employees, Shelby Lemler stated that the sales list needed to be "scrub[bed]" because Mr. Zavagno "wasn't the driver behind" the sales even though he was "listed on a lot of these." Mr. Zavagno was not included in this discussion.

### O.      Mr. Zavagno retires from MXR.

On February 15, 2024, Mr. Zavagno and MXR entered into a Transition and Separation Agreement & Release ("Separation Agreement"). The Separation Agreement referenced the 2023 Commission Plan, "Employment Agreements and other agreements and policies affecting the

terms of Zavagno's employment" (the "Existing Agreements"). The Separation Agreement

contained a "No Claims" provision:

> Except to the extent raised in reasonable detail and in writing prior to the Termination Date, neither the Company nor Zavagno shall have any remaining duties, liabilities or obligations to the other, except as expressly set forth in this Agreement, following the Termination Date, and each party hereto unconditionally releases and waives any such unasserted claims.

The Separation Agreement also contained a robust release:

> The releases contained in this Agreement cover all rights, claims and causes of action of any kind which a party may have that are related to Zavagno's employment with the Company or termination of that employment.

Additionally, the Separation Agreement contained an integration clause:

> This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations, representations and discussions of the parties, whether oral or written, express or implied, including without limitation the Existing Agreements, it being agreed that as of the Termination Date the Existing Agreements shall be of no further force or effect.

The Separation Agreement provided that the "Termination Date" was May 31, 2024. Mr.

Zavagno still believed that MXR owed him additional commissions, and Mr. Amato continued to

have questions regarding the Siemens relationship and Mr. Zavagno's alleged "moonlighting."

Regardless, Mr. Zavagno believed that the parties would walk away amicably from the situation.

**P.     MXR sues Mr. Zavagno.**

On May 10, 2024, MXR sent a letter (through counsel) to Mr. Zavagno asserting that Mr.

Zavagno had breached his duty of loyalty to MXR and tortiously interfered with MXR's

customers. The letter specified only those two claims and related exclusively to Siemens sales. No

other claims were raised in reasonable detail by MXR.  Mr. Zavagno responded to the letter

through counsel on May 24, 2024, asserting that MXR had failed to pay him all of the commissions

to which he was entitled and demanding a full accounting of all commissions that he was owed. MXR subsequently filed this lawsuit on July 25, 2024.

**Q.** **MXR repeatedly stonewalls Mr. Zavagno during discovery.**

Throughout discovery in this case, MXR repeatedly refused to produce documents plainly relevant to Mr. Zavagno's commissions counterclaim. Mr. Zavagno extensively conferred in good faith with MXR to obtain the requested materials. MXR also refused to provide Mr. Zavagno with access to his "universal-systems" email address, which was the primary email address he used to conduct business while at MXR. It was only after this Court ordered production of these materials that MXR finally produced these materials, which revealed information that substantiated Mr. Zavagno's counterclaim.

**II.  DISCUSSION OF CONTROLLING LAW.**

MXR asserts eight claims against Mr. Zavagno: Breach of the Employment Agreement (Count I); Breach of the Asset Purchase Agreement (Count II); Unjust Enrichment (Count III); Violation of the Defend Trade Secrets Act of 2016 (Count IV); Violation of the Ohio Uniform Trade Secrets Act (Count V); Unfair Competition (Count VI); Tortious Interference with Business Relations (Count VII); and Breach of the Duty of Loyalty (Count VIII). MXR also asserts claims for Breach of the Asset Purchase Agreement, Unfair Competition, and Tortious Interference with Business Relations against USDI.

Mr. Zavagno asserts a Breach of Contract Counterclaim (Count I) for unpaid commissions. Ohio law governs all the claims and counterclaim at issue except for Count IV, which is governed by federal law.

### A.    Count I – Breach of the Employment Agreement

MXR claims that Mr. Zavagno breached the Employment Agreement by competing with MXR, using and disclosing its "Confidential Information," soliciting MXR's customers, and disparaging MXR. (ECF 57, PageID 1216-18.) MXR's claims will fail for the following reasons:

- Mr. Zavagno's actions did not constitute a breach of the express terms of the Employment Agreement. *Farmers Mkt. Drive-In Shopping Ctrs., Inc. v. Magana*, 2007-Ohio-2653, ¶ 31 (Ohio App. 2007) (citations omitted);

- Even if Mr. Zavagno's actions constituted a breach, the breach was not "material" (i.e., Mr. Zavagno did not violate a term essential to the purpose of the contract). *Nious v. Griffin Constr. Inc*., 2004-Ohio-4103, ¶ 14 (Ohio App. 2004);

- The information that MXR claims to be its "Confidential Information," was not in fact confidential pursuant to the contractual definition and also is not protected by the law;

- The non-competition provisions of the Employment Agreement are unenforceable in view of the conduct of MXR and all the facts and circumstances of this case. *Total Quality Logistics, LLC v. Eda Logistics LLC*, No. 23-3713, 2024 U.S. App. LEXIS 25149, at *13 (6th Cir. 2024); *James B. Oswald Co. v. Neate,* 98 F.4th 666, 673 (6th Cir. 2024); *Union Home Mortg. Corp. v. Cromer,* 31 F.4th 356, 366 (6th Cir. 2022); *Professional Investigations & Consulting Agency, Inc. v. Kingsland*, 69 Ohio App. 3d 754, 759 (Ohio App. 1990); *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1979);

- The parties modified the Employment Agreement's obligations through their conduct such that Mr. Zavagno's actions in selling MR/CT systems that MXR could not sell was permitted. *Exact Software N. Am., Inc. v. Infocon Sys.*, No. 3:03CV7183, 2004 U.S. Dist. LEXIS 7580, at *15 (N.D. Ohio Apr. 16, 2004);

12

- MXR waived the obligations of the Employment Agreement, acquiesced in the conduct of Mr. Zavagno or is otherwise estopped from enforcing the terms of the Employment Agreement. *Ultimate Salon & Spa, Inc. v. Legends Constr. Grp.*, 2019-Ohio-2506, ¶ 32 (Ohio App. 2019); *Ragen v. Hancor, Inc.*, 920 F. Supp. 2d 810, 818 (N.D. Ohio 2013); *White Co. v. Canto Transp. Co.*, 2 N.E.2d 501, 505 (Ohio 1936); *Allenbaugh v. City of Canton*, 28 N.E.2d 354, 357 (Ohio 1940); and

- MXR waived this claim by failing to raise it in "reasonable detail" prior to May 31, 2024, as provided for in the Separation Agreement.

Finally, Mr. Zavagno will contend that MXR is barred from recovering damages in the form of lost profits based on the contractual limitation in the Asset Purchase Agreement (which expressly applies to the Employment Agreement) and that MXR cannot otherwise demonstrate any damages arising from Mr. Zavagno's alleged breach of the Employment Agreement. *See Task v. Nat'l City Bank*, 1994 Ohio App. LEXIS 437, *11-12 (Ohio App. Feb. 10, 1994).

### B. Count II – Breach of the Asset Purchase Agreement

MXR contends that Mr. Zavagno and USDI breached the APA by continuing to operate Universal Medical Systems, Inc. for competitive purposes, registering the trade name "Universal Medical Systems," competing with MXR, using and disclosing MXR's "Confidential Information," and soliciting MXR's customers. Defendants will succeed on these claims based on the following facts and law:

- A determination that, under the facts and circumstances of this case, USDI cannot be held liable for the actions of Mr. Zavagno;

- That MXR waived the obligations of the APA, acquiesced in the conduct of Mr. Zavagno and USDI, or is otherwise estopped from enforcing the terms of the APA. *Ultimate Salon*

13

*& Spa, Inc. v. Legends Constr. Grp.*, 2019-Ohio-2506, ¶ 32 (Ohio App. 2019); *Ragen v. Hancor, Inc.*, 920 F. Supp. 2d 810, 818 (N.D. Ohio 2013); *Co. v. Canto Transp. Co.*, 2 N.E.2d 501, 505 (Ohio 1936); *Allenbaugh v. City of Canton*, 28 N.E.2d 354, 357 (Ohio 1940);

- The APA's noncompetition clause is unenforceable for the reasons set forth above, and to the extent it was ever enforceable, expired by its own terms on September 28, 2022;

- The parties modified the APA's terms through their conduct. *Exact Software N. Am., Inc. v. Infocon Sys.*, No. 3:03CV7183, 2004 U.S. Dist. LEXIS 7580, at *15 (N.D. Ohio Apr. 16, 2004);

- Mr. Zavagno's actions did not constitute a breach of the APA and, even if they did, any purported breach of the APA by Mr. Zavagno or USDI was immaterial. *Nious v. Griffin Constr. Inc*., 2004-Ohio-4103, ¶ 14 (Ohio App. 2004); and

- MXR failed to raise this claim in reasonable detail prior to May 31, 2024, as required by the Separation Agreement.

Finally, Mr. Zavagno and USDI will argue that the APA contains a lost profits waiver which expressly prohibits MXR's recovery of lost profit damages.

### C.    Count III – Unjust Enrichment

MXR contends that Mr. Zavagno was unjustly enriched by knowingly and voluntarily retaining commission payments while selling Siemens equipment without MXR's knowledge or consent. (ECF 57, PageID 1219-20.) This claim will fail for the following reasons:

- MXR cannot demonstrate that it performed services for Mr. Zavagno's benefit and with his knowledge. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984);

14

- Mr. Zavagno did not know, nor should he have known, that MXR's services were given with reasonable expectation of payment. *Id.*;

- Mr. Zavagno had no reasonable opportunity to prevent MXR from giving the services prior to rendering them for Mr. Zavagno. *Id.*;

- Any benefit that Mr. Zavagno received was not done so unjustly. *Yates v. CEO8 Consulting, LLC*, No. 3:23-cv-930, 2026 U.S. Dist. LEXIS 68111, at *17 (N.D. Ohio Mar. 30, 2026);

- It would be inequitable under the circumstances to require Mr. Zavagno to pay the value of any alleged benefit he received. *State Farm Mut. Auto Ins. Co. v. Balcer Performance & Restoration*, 2018-Ohio-4868, ¶ 20 (Ohio App. 2018);

- The unjust enrichment claim does not have a factual basis independent from MXR's contract-based claims. *Union Sav. Bank v. Washington*, 2019-Ohio-3203, ¶ 43 (Ohio App. 2019); *Champion Contr. & Constr. Co. v. Valley City Post No. 5563*, 2004-Ohio-3406, ¶ 25 (Ohio App. 2004);

- MXR voluntarily paid Mr. Zavagno with full knowledge of the relevant facts. *Connectivity Sys. v. Nat'l City Bank*, No. 2:08-cv-01119, 2009 U.S. Dist. LEXIS 134083, at *5 (S.D. Ohio Aug. 20, 2009) (citations omitted);

- MXR received the performance required by Mr. Zavagno pursuant to the parties' agreements such that a claim for unjust enrichment cannot be sustained. *Scott Charles Laundromat, Inc. v. City of Akron*, 2012-Ohio-2886, ¶ 13 (Ohio App. 2012);

- MXR's claim is barred based on its own fault in relation to the transactions at issue. *Just Like Us Family Enrichment Ctr. v. Easter*, 2010-Ohio-4893, ¶¶ 19-20 (Ohio App. 2010); and

15

- MXR's claim is barred by the release contained in the Separation Agreement and MXR's failure to raise this claim in reasonable detail.

### D. Count IV – Trade Secrets Misappropriation Under the Defend Trade Secrets Act of 2016

MXR contends that it possesses "Confidential Information" which constitutes a protectable trade secret under federal law. (ECF 57, PageID 1220-21.) The success of this claim depends upon the following issues of fact and law:

- That MXR's "Confidential Information" does not constitute a trade secret as that term is defined by federal law. *United States v. Howley*, 707 F.3d 575, 579 (6th Cir. 2013);

- That Mr. Zavagno did not misappropriate MXR's purported trade secrets. *Brake Parts, Inc. v. Lewis*, 443 Fed. Appx. 27, 31 (6th Cir. 2011); and

- Even if MXR's "Confidential Information" constituted protectable trade secrets, Mr. Zavagno did not use improper means. *Millennium Health, LLC v. Roberts*, No. 1:19CV2381, 2020 U.S. Dist. LEXIS 93942, at *49-50 (N.D. Ohio Mar. 4, 2020).

### E. Count V – Trade Secrets Misappropriation Under the Ohio Uniform Trade Secrets Act

MXR's claim under the Ohio Uniform Trade Secrets Act will turn on the following issues, which are substantially and analytically similar to its federal trade secrets claim:

- That MXR possessed no "trade secrets" as that term is defined by the law. *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 106 N.E. 3d 1, 8-10 (Ohio 2018); and

- That Mr. Zavagno did not "misappropriate" MXR's trade secrets because he did not employ "wrongful means" for any alleged misappropriation of a trade secret. *Boehm v. Black Diamond Casino Events, LLC*, 2018-Ohio-2379, ¶ 10 (Ohio App. 2018)

16

### F.  Count VI – Unfair Competition

MXR's unfair competition claim against Mr. Zavagno and USDI largely refers to other allegations in its Amended Complaint. (*See* ECF 57, PageID 1222-23.) This claim will depend on the following issues:

- That Mr. Zavagno and USDI had no purpose to deceive and did not represent to the public that MXR's goods were affiliated with Mr. Zavagno and USDI. *El-Hitti v. Americare Kidney Inst., LLC*, 2025-Ohio-165, ¶ 14 (Ohio App. 2025);

- That MXR's unfair competition claim possesses no factual basis independent from its Ohio Uniform Trade Secrets Act Claim and is therefore preempted. *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 2017-Ohio-4292, ¶ 32 (Ohio App. 2017); *Steris Corp. v. Haller*, No. 1:25 CV 2778, 2026 U.S. Dist. LEXIS 142046, at *14 (N.D. Ohio June 26, 2026); and

- That USDI cannot be liable for Mr. Zavagno's conduct because MXR's allegations make plain that the conduct it seeks to hold USDI liable for arises from Mr. Zavagno's actions.

### G.  Count VII – Tortious Interference with Business Relations

MXR's claim for tortious interference against Mr. Zavagno and USDI should fail for the following reasons:

- MXR cannot prove the existence of a business relationship with which Mr. Zavagno and USDI interfered. *Georgia-Pacific Consumer Prods. LP v. Four-U-Packing, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012);

- Mr. Zavagno and USDI possessed a justification or privilege. *Id.*; *Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 860 (Ohio 1999);

- Mr. Zavagno and USDI did not act with a purpose to interfere. *Id.*;

- MXR had no business expectancy to be interfered with. *Id.*

17

- Mr. Zavagno's and USDI's competition, to the extent it can be categorized as competition, was proper. *Fred Siegel*, 707 N.E.2d at 860; and

- MXR's claim is barred by its breach of contract claims. *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App. 3d 598, 612 (Ohio App. 1995).

### H.      Count VIII – Breach of the Duty of Loyalty

MXR contends that Mr. Zavagno breached his duty of loyalty by competing with MXR, using and disclosing its "Confidential Information," soliciting MXR's customers, and disparaging MXR. (ECF 57, PageID 1223-24.) This claim will fail for the following reasons:

- Mr. Zavagno did not compete with MXR because MXR could not sell new Siemens equipment. *Integrity Express Logistics, LLC v. Grgurich*, No. 1:23-cv-581, 2025 U.S. Dist. LEXIS 55518, at *5-6 (S.D. Ohio Mar. 25, 2025);

- MXR understood that Mr. Zavagno was to compete through his sale of excluded assets and its failure to act upon learning that Mr. Zavagno was conducting Siemens sales;

- The terms of Mr. Zavagno's employment provided a privilege for Mr. Zavagno to make Siemens sales, and this is demonstrated by the course of dealing between MXR and Mr. Zavagno. Restatement (Second) of Agency, § 391, cmts. a, b.;

- That Mr. Zavagno's actions were not inconsistent with his duties to MXR. *Id.*; and

- MXR's claim, to the extent it is based on misappropriation of MXR's "Confidential Information," cannot independently survive. *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 922 (N.D. Ohio 2011); and

- Mr. Zavagno's disloyalty, if any, does not rise to the level such that MXR is entitled to disgorgement of Mr. Zavagno's compensation. *Mollett v. Lawrence Cnty. Bd. of Developmental Disabilities*, 2024-Ohio-1434, ¶ 75 (Ohio App. 2024).

### I.  Breach of Contract Counterclaim (Commissions)

Mr. Zavagno's commissions counterclaim will succeed because the evidence will show that MXR agreed to pay him commissions on all equipment and service contracts purchased by national accounts. This will turn on the following issues:

- That Mr. Zavagno and Ted Sloan agreed to a commission arrangement separate from the terms of Mr. Zavagno's employment agreement, and MXR paid commissions based on that agreement. *Lucas v. Costantini*, 13 Ohio App. 3d 367, 368 (Ohio App. 1983);

- Mr. Zavagno's and MXR's course of performance evidences the existence of Mr. Zavagno's right to receive commissions on sales to national accounts, with MXR acknowledging the same. *Kevin O'Brien & Assocs. Co., LPA v. PLS Fin. Sols. of Ohio*, 2024-Ohio-3170, ¶ 30 (Ohio App. 2024); and

- MXR breached the parties' agreement by failing to pay Mr. Zavagno all the commissions he was owed. *Farmers Mkt. Drive-In Shopping Ctrs., Inc. v. Magana*, 2007-Ohio-2653, ¶ 31 (Ohio App. 2007) (citations omitted).

### III.  PROPOSED WITNESSES

**A.  David Zavagno.** Mr. Zavagno will have knowledge regarding the APA, his Employment Agreement, commissions arrangement, work with Siemens, work at USDI, and other matters related to his tenure at MXR.

**B.  Bernard Amato.** Mr. Amato will have knowledge concerning Mr. Zavagno's commission arrangement, Mr. Zavagno's and USDI's work with Siemens, and other matters related to Mr. Zavagno's employment at MXR.

**C.  Effie Fryer.** Ms. Fryer will have knowledge regarding the 2023 reconciliation which uncovered additional commissions owed to Mr. Zavagno and the amount of commissions that MXR contends it owes Mr. Zavagno.

D. **Seth Kardonsky.** Mr. Kardonsky will have knowledge regarding Mr. Zavagno's sales of Siemens equipment and other MXR operations related to sales of CT and/or MRI equipment.

E. **Shelby Lemler.** Mr. Lemler will have knowledge regarding MXR's capacity to sell new Siemens equipment, MXR's sales operations, and some knowledge regarding Mr. Zavagno's sales of Siemens equipment.

F. **Kathleen Colahan.** Ms. Colahan will have knowledge regarding Mr. Zavagno's transition from an employee under contract to an "at-will" employee and MXR's understanding of the impact this transition had on Mr. Zavagno's responsibilities at MXR.

G. **John Zalick.** Mr. Zalick was Mr. Zavagno's accountant during the relevant time period and will have knowledge of Mr. Zavagno's tax returns. Mr. Zalick was also involved in the negotiations surrounding the two offset agreements and can testify as to his understanding of those agreements.

H. **Charles Zuckerman.** Charles Zuckerman is the Chairman of the Board of MXR. He will have knowledge regarding Mr. Zavagno's departure from MXR and MXR's rationale for pursuing legal action against Mr. Zavagno.

I. **Sean R. Saari.** Mr. Saari is MXR's designated expert witness and will testify regarding MXR's purported damages.

J. **Jeffrey D. Firestone.** Mr. Firestone is Mr. Zavagno's and USDI's designated expert witness and will testify regarding Mr. Zavagno's damages.

IV. **INDEX OF PROPOSED EXHIBITS**

An index of proposed exhibits is attached hereto as Exhibit A.

20

V.       **EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

A.       **Admissibility of Mr. Firestone's Expert Report:** MXR filed a motion *in limine* to exclude the expert report of Mr. Firestone (ECF 142) on the basis that the expert report was untimely. Mr. Zavagno and USDI contend that this report was timely served in light of MXR's failure to produce the materials needed to substantiate Mr. Firestone's report until well after the expert witness disclosure deadline had passed.

B.       **Admissibility of Certain Commissions Evidence:** MXR contends that certain evidence relating to Mr. Zavagno's commissions is irrelevant based on Mr. Zavagno's counterclaim allegations, the statute of limitations for breach of contract claims, and Ms. Fryer's 2023 reconciliation. (*See* ECF 150.) Mr. Zavagno disputes these arguments and contends that they do not impose evidentiary limitations.

C.       **Admissibility of Post-May 31 Conduct:** Mr. Zavagno and USDI contend that evidence of conduct that occurred after May 31, 2024 is inadmissible based on the terms of the Separation Agreement, which signaled the end of Mr. Zavagno's employment at MXR. (*See* ECF 147.)

D.       **Adverse Inference Regarding Commissions:** Mr. Zavagno contends that MXR's refusal to produce information plainly relevant to his commissions counterclaim entitles him to an adverse inference regarding his commission structure and the amounts owed. (*See* ECF 154.)

E.       **Admissibility of Lost Profits:** Mr. Zavagno and USDI contend that the express terms of the APA prohibit the recovery of lost profits, thereby making evidence relating to those profits inadmissible. (*See* ECF 152.)

F.       **Admissibility of Non-Siemens Sales:** Mr. Zavagno and USDI contend that MXR cannot present evidence relating to sales of non-Siemens CT or MRI equipment based on

21

MXR's failure to provide notice of claims relating to those sales prior to May 31, 2024. (*See* ECF 148.)

**G.      Admissibility of April 1, 2021 Siemens Letter.** Mr. Zavagno contends that an April 1, 2021 letter from Siemens is inadmissible hearsay and unfairly prejudicial to Mr. Zavagno.  (*See* ECF 157.)

## VI.      PROPOSED VOIR DIRE QUESTIONS

1.      Are you aware of any of the parties to this case?  Do you have any opinions about any of them?

2.      Have you ever served on a jury?  What kind of a case?  What was the result?

3.      Have you ever filed a suit or brought a claim?  If yes, please explain.

4.      Have you ever been sued?  If yes, please explain.

5.      Have you ever worked with MRI or CT imaging equipment or any business involved with selling medical equipment?

6.      Have you ever signed a release or a waiver of claims for which you were paid?

7.      Have you ever entered into a severance or separation agreement when leaving a job?

8.      Have you ever had an employment agreement or a non-competition agreement with an employer?  If yes, please explain.

9.      Have you ever been involved in the negotiation of a contract?

10.      Have you had any experience in sales?  If yes, please explain.

11.      Have you ever been paid commissions?  If yes, please explain.

12.      Have you ever owned a business?  If so, did you operate the business?  What was the business and how long did you own and operate it?

13.      Have you ever sold a business or assets?  If yes, please explain.

22

14.     Do you believe that damages awarded by juries today are too high, too low or about right?

**VII.    PROPOSED JURY INSTRUCTIONS**

A list of proposed jury instructions is attached hereto as Exhibit B.

Dated: July 8, 2026                              Respectfully submitted,

                                                 **THOMPSON HINE LLP**


                                                 /s/ *Robert F. Ware*
                                                 Robert F. Ware (0055515)
                                                 Mark R. Butscha, Jr. (0088854)
                                                 3900 Key Center
                                                 127 Public Square
                                                 Cleveland, Ohio 44114
                                                 Telephone: (216) 566-5861
                                                 Facsimile: (216) 566-5800
                                                 Rob.Ware@ThompsonHine.com
                                                 Mark.Butscha@ThompsonHine.com

                                                 Theodore K. Khabiri (0104733)
                                                 41 South High Street, Suite 1700
                                                 Columbus, Ohio 43215-6101
                                                 Telephone: (614) 469-3218
                                                 Facsimile: (614) 469-3361
                                                 Theodore.Khabiri@ThompsonHine.com

                                                 *Counsel for Defendant/Counterclaim Plaintiff*
                                                 *David Zavagno and Defendant Universal*
                                                 *Systems Diagnostics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ *Robert F. Ware*
Robert F. Ware